Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
155 Montgomery Street, Suite 1004
San Francisco, California 94104
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Proposed Counsel for Debtor

# UNITED STATES BANKRUPTCY COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

Oakland Division

In re

PARKWAY PROPERTIES 15, LLC

Debtor

Case No. **15-42247 WJL**

Chapter 11

DATE: August 12, 2015
TIME: 10:30 a.m.
JUDGE: Honorable William J. Lafferty, III
COURT: Room 220

## MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

TO: THE HONORABLE WILLIAM J. LAFFERTY, III
UNITED STATES BANKRUPTCY JUDGE

The Motion of Parkway Properties 15, LLC ("Parkway"), Debtor and Debtor-in-Possession, for an Order authorizing it to use cash collateral, respectfully represents as follows:

1. On July 17, 2015 Parkway filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. No trustee has been appointed, and Parkway operates its business as debtor-in-possession to 11 USC § 1101 *et. seq*.

*The Center*

1.      The Debtor's principal asset is a retail shopping center located at 2334-2386 Buchanan Road, Antioch CA 94509, Antioch, California and commonly known as the Orchard Square shopping center (the "Center").

2.      The Debtor purchased the Center in February of 2003. The Center was successful and profitable for many years. For example, the appraisal obtained by the Bank in May of 2009 valued the Center at $8.3 million dollars. (By way of comparison, the Bank's mortgage is about $5.4 million dollars.)

3.      In recent times, the Center has suffered from several adverse dislocations. First, the Center lost its anchor, an Orchard Supply Hardware store, and has thus far failed to replace it. (The anchor tenant's parcel is not owned by the Debtor, so the Debtor's ability to solve this problem is limited.) Second, Antioch has experienced a very slow recovery from the Great Recession, and its retail economy remains severely depressed. Third, construction on Highway 4, intended to double its capacity, has resulted in severe traffic congestion.

4.      The consequence of these dislocations is that the Center is currently only 47% occupied. As a result of its current depressed occupancy level, the Center does not generate material income in excess of operating expenses.

5.      If leased up and stabilized, the Debtor believes the value of the Center exceeds $6.6 million. The Debtor's business plan for its reorganization involves preserving and retaining existing tenancies and obtaining new tenants so as to regain an appropriate occupancy level at the Center.

*Proposed Use of Cash Collateral*

6.      For present purposes, Parkway assumes that the rents constitute the cash collateral of the Bank, and through this Motion seeks authorization to pay the expenses of the property as "adequate

protection" for its secured creditor, to pay U.S. Trustee fees and utility deposits, and to impound any excess rents pending further Court Order, all as presented herein.

      7.    Specifically, the estimated monthly rental income, and the expenditures the Debtor proposes that it be authorized to make from it, are as follows:

**Monthly Income**

| | | |
|---|---|---:|
| Base Rent | $ | 23,466.44 |
| CAM | $ | 7,686.19 |
| **TOTAL:** | **$** | **31,152.63** |

**Monthly Expenses**

| | | | |
|---|---|---|---:|
| Property Taxes | (Not Current Cash) | $ | 4,732.00 |
| PGE | | $ | 600.00 |
| Insurance | | $ | 1,511.90 |
| Janitorial | | $ | 700.00 |
| Security | | $ | 2,650.00 |
| Repairs & Maintenance | | $ | 800.00 |
| Fire/Safety/monitoring | | $ | 300.00 |
| Fire Safety repairs | | $ | 800.00 |
| Refuse | | $ | 1,400.00 |
| Landscaping | | $ | 925.00 |
| HVAC | | $ | 550.00 |
| Management fees (5%) | | $ | 1,557.63 |
| Sewer | | $ | 3,695.00 |
| Water | | $ | 2,500.00 |
| Pest Control | | $ | 100.00 |
| **TOTAL (Cash):** | | **$** | **18,089.53** |

**Estimated Quarterly U.S. Trustee Fees**   $    975.00

**Utility Deposits (estimated at 150% of a month's charge)**

| | | |
|---|---|---:|
| PG&E | $ | 900.00 |
| Refuse | $ | 2,100.00 |
| Sewer | $ | 5,542.50 |
| Water | $ | 3,750.00 |
| **TOTAL Estimated Deposits** | **$** | **12,292.50** |

8. The Debtor submits that the payment of these expenses is necessary in order to protect and preserve the property and to ensure the timely payment of rent, and so the payment of these expenses represents a form of adequate protection to the secured creditors.

9. In addition, pursuant to Section 366 of the Bankruptcy Code, the Debtor must fund an appropriate post-petition deposit to each of the utilities. The Debtor has proposed that one month's average utility bill represents an appropriate deposit, but recognizes that the utilities may think otherwise. The proposed cash collateral budget authorizes deposits up to 150% of a month's rent, to provide cost-effective room to negotiate. The Debtor seeks authorization to pay an appropriate deposit to each of the utilities, and submits that the provision of deposits to the utilities represents a form of adequate protection to its secured creditors.

10. The Debtor requires property management services and has historically looked to Parkway Properties Investment Corporation ("PPIC") to provide those services. PPIC is an affiliate of the Debtor: the same person is a 55% majority member and Manager of Parkway Properties 15, LLC., and an owner of PPIC. PPIC has operated the Center since 2003, and knows all of the tenants and their issues intimately. PPIC's property management fee is 5% of the gross rents received, which the Debtor believes is standard in the industry. In addition, PPIC has agreed to prepare the Debtor's Monthly Operating Reports at no additional charge, a service which would result in material fees if the Debtor were required to engage to bookkeepers/accountants. The Debtor submits that property management services are necessary in order to preserve, protect and administer the Center, that the proposed fee is a fair and reasonable one, and that replacing the Debtor's property manager at this juncture would only cause disruption and would provide no benefit to creditors or the estate.

*Legal Authority*

11. The Debtor submits that the use of cash collateral to fund operating expenses constitutes a form of adequate protection to its secured creditor.

> Use of the cash collateral for needed repairs and renovations should actually result in increased rentals. Debtor has committed to use the cash collateral to pay operating expenses and improve and maintain the Property with any excess income going to First Texas. By dedicating cash collateral for these purposes, debtor has substantially eliminated the risk of diminution of First Texas' interest in cash collateral. The more likely scenario is that cash collateral will increase.
>
> \* \* \*
>
> Debtor proposes to protect this interest by using the rental income for operating expenses and repairs and renovations to the Property and remitting any excess to First Texas…. Based on this offer of adequate protection by debtor, I find that debtor has satisfied the adequate protection requirements of § 363(e).

*In re McCombs Properties VI, Ltd.* 88 B.R. 261, 268 (Bkrtcy. C.D.Cal., 1988)

WHEREFORE, the Debtor prays that the Court make and enter its Order:

1. Determining that, under the circumstances, creditors and parties in interest have received adequate notice and an opportunity to be heard;

2. Authorizing the Debtor to use the monthly rents to fund the payment of ordinary operating expenses of the Property, as identified herein;

3. Authorizing the Debtor to use the monthly rents and accumulated funds on hand to fund the payment of appropriate deposits to the utilities respecting the Center and to fund U.S. Trustee Fees;

4. Authorizing the Debtor to impound the excess monthly rents after payment of the foregoing in the ordinary course of its business; and

5. Granting such other and further relief as may be just and proper.

DATED: July 29, 2015     Respectfully submitted,

ST. JAMES LAW, P.C.

By: /s/ *Michael St. James* .
    Michael St. James
    Proposed Counsel for the Debtor

# Exhibit A
# Orchard Square
# Rent Roll

| Suite | Common Area % per lease | Tenant | Sq. Ft. | Rent | CAM TI Reimburse | Total from Tenants | Per Sq. Ft | Lease Period | Next Rent Inc | Option | Deposit |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2334 | 17.50% | *VACANT* | 7,980 | | | | $ - | | | | $ - |
| 2340 | 6.23% | *VACANT* | 2,839 | | | | $ - | | | | |
| 2348 | 5.47% | *VACANT* | 2,496 | | | | $ - | | | | |
| 2350 | 2.36% | Horrigan Cole 2/1/14 | 1,075 | | | | $ - | | | | |
| 2352 | 8.23% | Horrigan Cole (2080 sf) | 3,752 | $ 4,782.56 | $ 1,800.00 | $ 6,582.56 | $ 1.75 | 1/31/19 | | 2-3 yr | |
| 2354 | 0.00% | Horrigan Cole (1672 sf) | | $ - | | | | | | | |
| 2356 | 5.09% | Curves/Jenny Craig | 2,323 | $ 3,532.20 | $ 986.19 | $ 4,518.39 | $ 1.95 | 11/30/2015 | | 1-3 yr 95% FM | |
| 2358 | 2.99% | Liberty Tax Services | 1,365 | $ 1,000.00 | | $ 1,000.00 | $ 0.73 | | | | $ 1,700.00 |
| 2360 | 3.34% | Accents | 1,521 | $ 1,900.00 | $ - | $ 1,900.00 | $ 1.25 | 9/30/2015 | | | |
| 2362 | 4.30% | Delta Fair Cleaners | 1,960 | $ 2,400.00 | $ 1,000.00 | $ 3,400.00 | $ 1.73 | 2/28/2018 | | 1-5 yr | $ 4,900.00 |
| 2370 | 13.35% | *VACANT* | 6,087 | | | $ - | $ - | | | | |
| 2376 | 7.44% | *VACANT* | 3,395 | | | | | | | | |
| 2378 | 8.55% | *VACANT* | 3,900 | | | $ - | $ - | | | | |
| 2386 | 15.15% | Fresenius Medical | 6,909 | $ 10,501.68 | $ 3,000.00 | $ 13,501.68 | $ 1.95 | 5/31/2016 | 6/1/2016 | 2-5 yr | |
| Total: | 100.00% | PP15 total sq ft | 45,602 | $ 24,116.44 | $ 6,786.19 | $ 30,902.63 | $ 0.53 | | | | $ 6,600.00 |
| 2388 | | Judy Post total sq ft 50.27% of certain CAM expenses | 46,100 | | | | | | | | |
| Totals: | | | 91,702 | | | | | | | | |